IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IAN C. TANNER,

    Plaintiff,

v.

JO ANNE B. BARNHART,

    Commissioner of Social Security,

    Defendant.

No. C 04-00289 JSW

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Now before the Court is the motion for summary judgment filed by Plaintiff Ian C. Tanner ("Tanner") and the cross-motion for summary judgment filed by the Commissioner of the Social Security Administration ("Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the administrative record and considered the parties' papers and the relevant legal authority, and good cause appearing, the Court hereby DENIES Tanner's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Tanner brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner denying his request for Social Security benefits. At the time of the decision at issue, Tanner was 32 years old. (Court Transcript ("Tr.") at 270.) He has a high school education, one year of college, and vocational training as an automotive mechanic.

(*Id.*)  Tanner suffers from carpal tunnel syndrome in his hands, wrists, and elbows, and degenerative disc disease and arthritis in his back, which causes pain in his buttocks and legs. (Tr. at 26-27.)  Prior to May 2001, Tanner had worked as an auto mechanic.  (Tr. at 118.) Tanner stopped working in May 2001 due to his back pain.  (Tr. at 117.)

Tanner received continuing treatment from Dr. Ronald Gains at Kaiser Permanente, as well as physical therapy and group treatment from the Kaiser Permanente "Managing Chronic Pain" Chronic Pain Care Management Program.  (Tr. at 172-208.)  In a letter dated October 21, 2003, Dr. Gains opined that Tanner needed to lie down and elevate his legs approximately four times during the eight-hour work day, for 20 minutes at a time.  He further noted that Tanner's carpal tunnel syndrome limited Tanner's grasping, carrying, and lifting abilities to 15 minutes a day.  (Tr. at 519.)

On December 27, 2001, Tanner underwent a consultative examination by Dr. Joseph Mariotti, an orthopedic surgeon at Uni-MED Medical Center.  (Tr. at 162.)  Dr. Mariotti opined that Tanner could stand for two hours at a time, but must shift about, that Tanner could walk one mile, lift ten pounds frequently and 20 pounds occasionally, and bend, stoop, crouch and kneel, but not repetitively.  (Tr. at 163.)  Dr. Mariotti also noted that Tanner did not suffer any impairment in his upper extremities with respect to reaching, handling, felling, or grasping. (*Id.*)

On April 22, 2002, Tanner underwent a consultative examination by Dr. Michael Kurtz, an orthopedic surgeon at Northgate Medical Center.  (Tr. at 214.)  Dr. Kurtz found that Tanner was not able to resume his work as an auto mechanic.  (Tr. at 215.)  Dr. Kurtz opined that Tanner was able to work a four-hour workday, sitting for a quarter of the day, and doing mixed activity for half the day.  (Tr. at 216.)  Dr. Kurtz also found that Tanner was restricted in the following ways: Tanner could never bend, squat, climb, crawl, or reach overhead, nor could he carry 10 pounds or more, walk around dangerous machinery, work at heights, be exposed to dust, lint, or fumes, or work in confined spaces.  (*Id.*)  Dr. Kurtz opined that Tanner could not use his hands for simple grasping, pulling, pushing, twisting, or fine manipulation.  (*Id.*)  Dr.

2

1    Kurtz found that Tanner could, however, lift up to 100 pounds to his waist, and use both of his
2    feet for repeated movements, drive automotive equipment, and work outside year round. (*Id.*)
3        On December 10, 2004, Tanner underwent a consultative examination by Dr. Farah
4    Rana, a board-eligible neurologist at the North State Medical Clinic. (Tr. at 520.) Dr. Rana
5    found that Tanner was able to stand and walk for six hours in an eight-hour work day, with
6    breaks, and that he could also sit for six hours, with breaks. (Tr. at 522.) Dr. Rana also found
7    that Tanner could carry ten pounds frequently and 20 pounds occasionally, and use push and
8    pull devices up to 20 pounds. (*Id.*) Dr. Rana noted that Tanner might have some difficulty
9    performing repetitive activity with his wrists, but that he could do repetitive activity for two to
10   three hours a day. (*Id.*) Dr. Rana also opined that Tanner would have difficulty with handling,
11   manipulation, feeling and fingering objects with his hands, as well as difficulty with frequent
12   stooping, bending, kneeling, climbing and squatting. (*Id.*)
13       On October 25, 2001, Tanner applied for a period of disability and Disability Insurance
14   Benefits under Title II of the Social Security Act alleging an inability to work beginning May
15   16, 2001, due to back injury, chronic pain, and scar tissue from previous back surgery. (Tr. at
16   117.) The application was denied initially on January 11, 2002 and upon reconsideration. (Tr.
17   at 73-92.) Tanner requested an administrative hearing before an administrative law judge
18   ("ALJ"). Tanner, along with his attorney Ian Sammis, and a vocational expert, appeared at the
19   de novo hearing before ALJ Charles D. Reite on March 27, 2003. (Tr. at 21-70.) On July 28,
20   2003, the ALJ issued a decision finding that Tanner was not disabled and therefore not entitled
21   to benefits because he retained the residual functional capacity to perform a significant number
22   of jobs in the national economy. (Tr. at 10-20.)
23       Tanner's request for administrative review was denied on January 9, 2004 by the
24   Appeals Council and an action was filed in this Court. (Tr. at 4-9.) On September 7, 2004, this
25   Court remanded Tanner's matter for further evaluation because Tanner offered material
26   evidence which the Appeals Council possibly did not consider. (Tr. at 439-440.) The Appeals
27   Council remanded the matter to the ALJ, vacating the earlier hearing decision. (Tr. at 441.)
28   The Appeals Council directed the ALJ to consider the evidence previously submitted to the

Appeals Council, to further consider the treating physician's opinion, and to obtain additional vocational evidence as necessary. (*Id.*)

On remand, the ALJ obtained additional medical records from Tanner and from a consultative examination, and obtained additional testimony from Tanner, a medical expert, and two vocational experts during the hearings on April 21, 2005 and August 2, 2005. (Tr. at 282-364; 518-89.) At the first hearing, Tanner and a vocational expert, Robert Raschke, both testified. (Tr. at 283.) This hearing was continued until August, at which time the ALJ heard testimony from Tanner, the medical expert Dr. Victor Schorn, and the vocational expert Sharon Taschenberg. (Tr. at 335.) The ALJ again found Tanner not disabled in a decision dated October 24, 2005. (Tr. at 266-81.)

On January 9, 2006, the Commissioner filed a request to reopen the matter before this Court. On February 3, 2006, Tanner brought the instant motion for summary judgment. On March 3, 2006, Commissioner filed a cross-motion for summary judgment, arguing that the ALJ's determination is supported by substantial evidence and is free of legal error. On March 30, 2006, Tanner filed his opposition to the Commissioner's cross-motion for summary judgment and in support of his motion.

## ANALYSIS

**A.    Standard of Review of Commissioner's Decision to Deny Social Security Benefits.**

A federal district court may not disturb the final decision of the Commissioner unless it is based on legal error or the fact findings are not supported by substantial evidence. 42 U.S.C. § 405(g); *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Considering the administrative record as a whole, "[s]ubstantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "[W]here the evidence is susceptible to more than one rational interpretation," the ALJ's decision must be upheld. *Id.* at 1039-40. To determine whether substantial evidence exists, courts must look to the record as a whole, considering both evidence that supports and undermines the ALJ's findings. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573,

4

576 (9th Cir. 1988). An ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

**B.     Legal Standard for Establishing a Prima Facie Case for Disability.**

The plaintiff has the burden of establishing a prima facie case for disability. *Gallant*, 753 F.2d at 1452. The ALJ follows a five-step process in determining whether the claimant is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42; *see* 20 C.F.R. § 404.1520. First, the claimant must not be engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § 404.1520(c). Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix 1 to the regulation (a list of impairments presumed severe enough to preclude work), claimant will be found disabled without consideration of age, education, or work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner will assess and make a finding about the claimant's residual functional capacity based on all relevant medical and other evidence in the claimant's case record. If the claimant can still perform his past work, he will not be found disabled, and the ALJ will move on to step five. 20 C.F.R. § 404.1520(f). In the fifth step, if the claimant's impairment prevents her from making an adjustment to any other work in the national economy, she will be found disabled. 20 C.F.R. § 404.1520(g). The claimant has the burden of proof at steps one through four; the burden shifts to the ALJ at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Here, the ALJ determined that Tanner was not disabled because (1) he does not have any of the related clinical findings so as to meet or equal the level of severity of any of the listings in Appendix 1, Subpart P, Regulations No. 4; and (2) he remains capable of performing other work. Based on the vocational expert testimony, Tanner's age, education, and residual functional capacity, the ALJ found that Tanner is able to perform other jobs that exist in significant numbers in the regional and national economies. (Tr. at 270, 279.) In making his decision, the ALJ relied on the medical opinions of Drs. Mariotti and Schorn, as well as the

5

medical report of Dr. Rana, to the extent that her report supported Dr. Mariotti's findings. (Tr. at 277-78). The ALJ gave less weight to the Dr. Gains' opinion, and discredited Dr. Kurtz. (Tr. at 276-77). The ALJ also found that the claimant's "alleged intensity, persistence and functionally limiting effects [of his reported symptoms] are not entirely credible." (Tr. at 278.)

**C.     The ALJ's Determination that Tanner Is Not Disabled Is Supported by Substantial Evidence and Free of Legal Error.**

**1.     Dr. Rana's Consultative Examination Is Valid.**

Tanner questions the validity of Dr. Rana's consultative examination, contending that Dr. Rana has not received the appropriate training to perform a neurological examination. The regulations provide that the ALJ may order a consultative examination when warranted. 20 C.F.R. § 404.1517. " It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (9th Cir. 1984). Consultative examinations are scheduled with qualified medical sources; qualified medical sources "must be currently licensed in the State and have the training and experience to perform the type of examination or test." 20 C.F.R. § 404.1519g. *Accord* 20 C.F.R. § 404.1513(a) ("Acceptable medical sources are – (1) Licensed physicians"). Consultative exams need not be performed by board-certified physicians. Dr. Rana is licensed by the state of California. (Tr. at 578, 581.)  Further, she has received training in neurology. From July 1995 to July 1998, Dr. Rana was a resident in neurology, and from July 1998 until the present, she has served as a neurology attending. (Tr. at 574.) The Court thus finds that Dr. Rana's qualification to perform neurological consultative evaluations is supported by substantial evidence.

Alternatively, Tanner argues that because the medical expert, Dr. Schorn, testified that Dr. Rana's examination was not a meaningful neurological examination, the ALJ committed legal error in according weight to Dr. Rana's opinion. The ALJ has the responsibility for resolving conflicts in the medical evidence. *See Andrews v. Shalala*, 53 F.3d at 1041; *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Generally, the ALJ should give the opinions of treating physicians greater weight than those of non-treating examining physicians or those of physicians who review the record. *Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003).

6

The ALJ may also reject the opinions of the treating physicians. *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004). Where the ALJ decides to reject the treating physician's opinions, he may do so by stating clear and convincing reasons if the treating physician is uncontroverted, and by stating specific and legitimate reasons if the treating physician is controverted by the other medical sources. *Benson v. Barnhart*, 331 F.3d at 1036. However, this rule does not apply when the non-treating physician's opinion rests on independent clinical findings. *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). The opinion of a non-treating source based on independent clinical findings may also be considered substantial evidence. *Andrews v. Shalala*, 53 F.3d at 1041. Further, medical expert opinions are given the same weight as non-examining medical opinions are. 20 C.F.R. § 404.1527(f)(2)(iii). The ALJ is "not bound by the findings made by the State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 404.1527(f)(2)(i). The ALJ is given discretion to weigh the medical expert's opinion among the other medical evidence presented; it is the responsibility of the ALJ to resolve discrepancies in the record. 20 C.F.R. § 404.1527(a-e).

The ALJ was not required to discredit Dr. Rana's opinion simply because Dr. Schorn stated that the report did not "have any meaning to [him]." (Tr. at 344.) Moreover, the ALJ only relied on Dr. Rana's report only insofar as it supported the findings of Dr. Mariotti. Instead, the ALJ relied on the opinions of Drs. Mariotti and Schorn in finding that Tanner was not disabled, and he fully explained his reasons for according each medical opinion the appropriate weight. (Tr. at 275-78.) The Court therefore finds that the ALJ's weighing of Dr. Rana's report was free of legal error.

**2.     The ALJ Fulfilled His Duty To Develop A Full and Fair Record.**

Tanner argues that the ALJ failed in his duty to develop a full and fair record by failing to request a "valid neurological consultative examination." (Plaintiff's Mot. at 3, 6-7.) "In Social Security cases, the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered even when the claimant is represented by counsel." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (citing *Brown v. Heckler*, 713

7

F.2d 441, 443 (9th Cir, 1983) (internal citations omitted). The duty is to make every reasonable effort to obtain from the claimant's treating physician or other treating health care provider all medical evidence necessary to make a decision regarding a claimant's disability status. 42 U.S.C. § 423(d)(5)(B). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen*, 80 F.3d at 1288.

Upon hearing Tanner's attorney's objections to Dr. Rana's qualifications, the ALJ continued the hearing to request the assistance of a medical expert. Further, the ALJ requested additional information from Dr. Rana regarding her qualifications. (*See, e.g.*, Tr. at 561-62, 588-89.) The ALJ also offered Tanner the opportunity to schedule an additional neurological examination with a Kaiser neurologist, which Tanner refused. (Tr. at 306.) Thus, the ALJ properly fulfilled his duty to develop the record.

Once the record had been supplemented as described above, it was adequate to allow for proper evaluation of the claimant's alleged disability. Although the medical expert, Dr. Schorn, noted the inconsistencies in the assessments by the doctors involved, he made the following unequivocal conclusion:

> Based on my evaluation, . . . I feel that [Tanner] should be able to lift 20 pounds occasionally, lift 10 pounds frequently. I think erring on the side of giving him the benefit of the doubt, I think he could stand and walk two hours in an eight-hour day. I think he can sit six hours in an eight-hour day. I think that as for as his postural limitations are concerned, I think he could occasionally bend. He can occasionally squat.

(Tr. at 344-45.) When later shown Dr. Mariotti's report, Dr. Schorn noted that, although he had not previously read the report, that he agreed with it, and that it was essentially the same as his own evaluation of the record. (Tr. at 349.) Dr. Mariotti and Dr. Schorn's opinions therefore provided two independent bases upon which the ALJ could make his finding that Tanner was not disabled. The Court finds that the ALJ fulfilled his duty to develop the record, and, that having done so, there was adequate evidence in the record for the ALJ to make his decision.

### 3.     ALJ's Determination of Claimant's Credibility Was Proper.

Tanner argues that the ALJ improperly discounted his testimony. (Plaintiff's Mot. at 7-13.) The Commissioner contends that the ALJ properly discounted Tanner's credibility as to

8

his subjective complaints. (Opp. at 5-7.) The fact that the claimant had some pain is not in dispute. The issue is "whether the ALJ erroneously rejected the existence of excess pain." *Johnson v. Shalala*, 60 F.3d 1428, 1433-34 (9th Cir. 1995). Pain is subjective in both existence and degree. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The ALJ cannot discount a claim of "excess pain" without making "specific findings justifying that decision." *Id.* at 602. These findings must be supported by clear and convincing reasons why the claimant's testimony of excess pain was not credible, and must be supported by substantial evidence in the record as a whole. *See Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

Here, the ALJ found that the "alleged intensity, persistence and functionally limiting effects [claimed by Tanner] are not entirely credible." (Tr. at 279.) The ALJ identified several contradictions between claimant's testimony and the relevant medical evidence and cited several instances of contradictions within the claimant's own testimony. (Tr. at 278-79.) For example, the ALJ pointed out the inconsistency between Tanner's daily activities, including caring for his son, vocational retraining classes, repairing cars privately and household chores, and his position that his symptoms are severe and prevent him from working. (*Id.*) The ALJ further noted that the lack of evidence of "aggressive medical management to corroborate the severe and functionally limiting symptoms claimed. The more reliable medical opinions as well as the opinion of the treating physician, indicate a residual functional capacity that is inconsistent with the level of symptoms claimed." (Tr. at 279.) The Court will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Therefore, the Court concludes that the ALJ made specific findings justifying a decision to discredit Tanner's allegation of excess pain.

**4.     The ALJ's Treatment of Physicians' Opinions Was Proper.**

Tanner argues that the ALJ improperly evaluated Tanner's treating source opinion. (Plaintiff's Mot. at 13.) "Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). When

9

there is a conflict between the opinions of a treating physician and an examining physician, as here, the ALJ may disregard the opinion of the treating physician only if he sets forth "specific and legitimate reasons supported by substantial evidence in the record for doing so." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Although the contrary opinion of a non-examining medical expert does not alone constitute specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record. *Tonapetyan*, 242 F.3d at 1149 (citing *Magallanes*, 881 F.2d at 752.)

Here, the ALJ did not completely disregard the opinion of Tanner's treating physician, Dr. Gaines. Rather, the ALJ relied on Dr. Gaines' general finding of Tanner's reduced capacity to work but refused to give controlling weight to Dr. Gaines' opinion. (Tr. at 275.) The ALJ also set forth several specific reasons for the weight he accorded Dr. Gaines' opinion, in a detailed and thorough summary, including a comparison with the opinions of Drs. Rana, Mariotti, and Schorn:

> As noted by the medical expert, Dr. Gaines provided inconsistent assessments and provided abnormal neurological signs in his medical source statement that were not documented in and substantiated by his progress notes. Specifically, Dr. Gaines indicated in March 2003 that claimant suffered sensory loss, reflex changes and muscle weakness but his progress notes and the reports of other reporting and examining physicians fail to document such neurological deficits. Nor do the MRIs of record show any nerve root compression to account for any neurological compromise. Dr. Gaines found degenerative changes in the lumbar spine and scar tissue in close proximity to the nerve root confirmed through the MRI results but the scar tissue was not believed to be a problem. It is also notable that Dr. Gaines has provided only conservative and symptomatic treatment that is consistent with the degenerative changes in the lumbar spine and scar tissue but inconsistent with significant functional loss. Claimant has been prescribed medications, physical therapy and pain management that is more in line with a pain problem as pointed out by Dr. Rana. Moreover, there is an absence of aggressive care that is associated with more serious abnormal findings. With respect to the carpal tunnel syndrome, wrist braces and medication were prescribed. The disorder appears to have existed prior to claimant's alleged onset date of disability and did not interfere with claimant's ability to perform work activity. Regular annual diagnostic testing showed improvement. In April 2003, Dr. Gaines did not advocate surgical intervention since the carpal tunnel syndrome was considered mild to moderate in severity with improvement. It was not until the November 2003 electrodiagnostic report that any progression was indicated. Even at that time, no aggressive treatment was prescribed to show that claimant was seriously symptomatic or functionally limited. . . . As the medical expert pointed out, there is a lack of adequate findings on physical examinations or

10

> other diagnostic findings to support Dr. Gaines' more limiting functional capacities assessment. Relying on the opinion of the medical expert and the supporting medical evidence, I have accorded some but not controlling weight to Dr. Gaines' opinion.

(Tr. at 275-76) (internal citations omitted). In addition, the Court's review of the record confirms that Dr. Gaines provided inconsistent assessments that lacked objective medical findings to support his more limiting functional capacity assessment. The contrary opinions of Drs. Mariotti, Rana, and Schorn regarding Tanner's residual functional capacity serve as additional specific and legitimate reasons for rejecting the opinion of Dr. Gaines. Moreover, their opinions serve as substantial evidence supporting the ALJ's findings with respect to Tanner's physical impairments and his functional capacity. The opinions of Drs. Rana and Mariotti alone constitute substantial evidence, because they rest on their own independent examination of Tanner. *See Miller*, 770 F.2d at 849. The Court concludes that the ALJ's assessment of Tanner's physical impairments and his residual functional capacity is supported by substantial evidence and is free of legal error.

**5.    The ALJ's Decision That Tanner Does Not Suffer from a Mental Impairment Was Proper.**

Tanner claims that the ALJ improperly found that Tanner did not suffer from a mental impairment. A claimant carries the burden of proof in establishing a mental impairment. 20 C.F.R. § 404.1520(c); *see Tackett v. Apfel*, 180 F.3d at 1098. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508; *see also* 20 C.F.R. § 404.1528 (defining symptoms, signs, and laboratory findings). The Social Security interpretive guidelines also provide that:

> No symptom or combination of symptoms by itself can constitute a medically determinable impairment. In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process.

SSR 96-4p, 1996 WL 374187, at *2.

According to the ALJ's opinion, Tanner reported in March 2002 that he suffered depressive symptoms. Tanner cites evidence that a psychologist was present at Kaiser

11

"Managing Chronic Pain" meetings, and that she recommended that Tanner seek individual sessions with a health psychologist. (Tr. at 177.) However, Tanner declined the treatment. (*Id.*) Dr. Gains also recommended that Tanner seek therapy. (Tr. at 247.) The ALJ concluded that the "medical evidence fail[ed] to establish a medical disorder that explains claimant's symptoms related to a depressive disorder." (Tr. at 279.) Indeed, there is no further evidence in the record that Tanner sought mental health assistance, or that his claims of depression can be buttressed by signs or laboratory findings, as required. This Court therefore finds that the ALJ's determination that Tanner does not suffer from a mental impairment is supported by substantial evidence and was made free of legal error.

### 6.   The Commissioner Has Met Her Burden of Proof.

Tanner argues that the Commissioner failed to carry her burden of proof in showing that Tanner can engage in substantial gainful activity other than his previous work. (Plaintiff's Mot. at 16-17.) Once a claimant shows that he cannot perform past relevant work, the burden shifts to the Commissioner to show that the claimant can engage in other substantial gainful activity. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). The Commissioner "can meet this burden by propounding to a vocational expert a hypothetical that reflects all the claimant's limitations." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 756). The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Id.* Rather, the ALJ is "free to accept or reject these restrictions . . . as long as they are supported by substantial evidence. . . . This is true even where there is conflicting evidence.'" *Id.* (quoting *Magallanes*, 881 F.2d at 757) (internal quotations omitted). Here, the ALJ propounded three hypothetical questions to vocational expert Sharon Taschenberg based on limitations supported by substantial evidence. (Tr. at 356-58.) The ALJ was not bound to accept the restrictions in the hypothetical questions propounded by Tanner's attorney. Therefore, the hypothetical questions posed by the ALJ were sufficient to satisfy the Commissioner's burden of proving that Tanner was capable of engaging in other substantial gainful activity other than his previous work.

12

**CONCLUSION**

For the foregoing reasons, this Court hereby DENIES Tanner's motion for summary judgment, and hereby GRANTS the Commissioner's cross-motion for summary judgment.

**IT IS SO ORDERED.**

Dated: July 14, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE